Filed 4/20/22  In re A.P. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re A.P. et al., Persons Coming Under the Juvenile Court Law. | B314494 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 21CCJP01501A–C) |
| Plaintiff and Respondent, | |
| v. | |
| N.P., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Stacy Wiese, Judge.  Affirmed.

Ernesto Paz Rey, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Kimberly Roura, Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

N.P. (Mother) challenges the juvenile court's jurisdictional findings and dispositional orders made August 9, 2021. On appeal, she does not contest the merits of the court's adjudication; instead, her sole contention is reversal is warranted because substantial evidence does not support the juvenile court's finding that the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) and related California law (Welf. & Inst. Code,[1] § 224 et seq.) do not apply to the minor children in the underlying proceedings.

We find Mother's arguments unavailing and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Because compliance with ICWA is the sole basis for Mother's appeal, we recite only those facts pertinent to her claim.

On March 30, 2021, a search of Mother's house found a large amount of methamphetamines, cocaine, heroin, and a substance believed to be fentanyl in her bedroom and hallway "within reach and access to any children in the home." Mother was arrested for possession of a controlled substance for sale, possession/purchase cocaine base for sale, and child endangerment.

On April 1, 2021, the Department of Children and Family Services (DCFS) filed a petition on behalf of minors A.P., D.B., and M.B., pursuant to section 300, subdivision (b)(1). The petition included an Indian Child Inquiry Attachment for each child setting forth that the children's social worker (CSW)

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

inquired as to Indian status and "on information and belief confirm[ed] . . . by asking the child, the child's parents, and other required and available persons about the child's Indian status." The inquiry gave "no reason to believe the child is or may be an Indian child."

The CSW discovered there was an ongoing family law case in the Los Angeles County Superior Court where the court had granted Mother and Adrian B. joint legal and joint physical custody of D.B. and M.B. In the underlying dependency matter, Adrian B. sought presumed father status as to all three minors. Although Adrian B. is not A.P.'s biological father, he held himself out as A.P.'s father since A.P.'s birth.

The children resided in the home of Adrian B.'s mother, i.e., paternal grandmother (PGM) for years. PGM identified herself as the children's main caretaker. Paternal great aunt (PGA) and maternal uncle (MU) were also identified as caring for the children or providing financial assistance.

On April 6, 2021, the minors' parents did not appear at the detention hearing; however, the children's PGM and paternal uncle[2] (PU) were present by WebEx. The juvenile court deferred paternity findings and the "determination of ICWA status . . . for the appearance of parents." The court removed all three minors from the custody and care of parents and ordered temporary placement and custody with DCFS pending further order of the court.

The next day at the arraignment, Mother and Father made their first appearance. PGM and PU were once again present by

---

[2] PU "sometimes visits and spends nights" at PGM's home where the children stay.

WebEx.  The court inquired as to the paternity of each minor child.  It found Adrian B. to be the presumed father of D.B. and M.B., and deferred paternity findings as to A.P. until A.P.'s father appeared.

The juvenile court reviewed each Parental Notification of Indian Status form (Judicial Council form ICWA-020) filed by Mother and Adrian B.  Mother had checked the box on her form stating that Indian status does not apply to her.[3]  Adrian B. similarly stated on his form that Indian status does not apply to him.  The juvenile court found it "does not have a reason to know that ICWA applies as to Mother."  The court found as to D.B. and M.B. that "there is no reason to know the children are Indian children within the meaning of ICWA and [found] ICWA does not apply to those two children."  The court instructed the parents "to keep [DCFS], their Attorney and the Court aware of any new information relating to possible ICWA status."  The court stated

---

[3]     The form includes seven other checkboxes, which Mother left unchecked:

a) "I am or may be a member of, or eligible for membership in, a federally recognized Indian tribe."
b) "The child is or may be a member of, or eligible for membership in, a federally recognized Indian tribe."
c) "One or more of my parents, grandparents, or other lineal ancestors is or was a member of a federally recognized tribe."
d) "I am a resident of or am domiciled on a reservation . . . or other tribal trust land."
e) "The child is a resident of or is domiciled on a reservation . . . or other tribal trust land."
f) "Either parent or the child possesses an Indian identification card indicating membership or citizenship in an Indian tribe."

it is "going to hold off on the full ICWA finding as to" A.P. until A.P.'s father appeared.

On May 20, 2021, Jose D. informed the juvenile court that a DNA test confirmed he is A.P.'s biological father. Jose D. filed a Parental Notification of Indian Status form indicating Indian status does not apply to him.

Mother and Jose D. appeared at the arraignment hearing the next day.[4] The juvenile court found Jose D. to be A.P.'s biological father, but found Adrian B. to be A.P.'s presumed father. The court next reviewed the Parental Notification of Indian Status form filed by Jose D. and stated Jose D. indicated he has no Indian ancestry. The court found "there is no reason to know [A.P.] is an Indian child within the meaning of ICWA, and . . . ICWA does not apply."

In the jurisdiction/disposition report filed May 24, 2021 and addendum report filed June 3, 2021, DCFS set out its conclusions about ICWA's applicability. DCFS referred to the juvenile court's April 7, 2021 finding that "it [did] not have a reason to know [D.B. and M.B.] are Indian children, and [did] not order notice to any tribe or BIA." DCFS informed the court that during Mother's telephonic interview with the CSW on May 18, 2021, she denied Native American ancestry; she said her cultural identification is "Latina." During the CSW's telephonic interview with Jose D. on May 19, 2021, he denied Native American ancestry and stated his cultural identification is "Mexican-American." Finally, Adrian B. informed the CSW that his cultural identification is Hispanic and denied Native American heritage. Based on the foregoing, DCFS concluded ICWA "does not apply" to the three minor children.

---

[4] MU was also present at the hearing by WebEx.

5

PGM had expressed interest in providing a permanent plan for the children, including legal guardianship. However, Mother ultimately decided she wanted to reunify with her children.

At the August 9, 2021, jurisdictional and disposition hearing,[5] the juvenile court sustained the petition as pled. The minors were declared dependent children of the court under section 300, subdivision (b); were ordered removed from the parents' home, custody, and care; and were placed with PGM under DCFS supervision. DCFS was ordered to provide family reunification services to all three parents.

Mother timely filed a notice of appeal. Fathers Adrian B. and Jose D. are not parties to this appeal.

## DISCUSSION

A.    *Standard of Review*

We review the juvenile court's ICWA findings " 'under the substantial evidence test, which requires us to determine if reasonable, credible evidence of solid value supports the court's order. [Citations.] We must uphold the court's orders and findings if any substantial evidence, contradicted or uncontradicted, supports them, and we resolve all conflicts in favor of affirmance.' " (*In re D.F.* (2020) 55 Cal.App.5th 558, 565 (*D.F.*); *In re A.M.* (2020) 47 Cal.App.5th 303, 314.) We review the evidence in the light most favorable to the juvenile court's findings and draw all reasonable inferences in support of those findings. (*In re J.N.* (2021) 62 Cal.App.5th 767, 774.)

---

[5]    Mother, Jose D., PGM, and PU appeared at the jurisdictional and disposition hearing.

6

The appellant—in this case, Mother—has the burden to show the evidence was not sufficient to support the ICWA finding.  (*D.F.*, *supra*, 55 Cal.App.5th at p. 565; *In re Austin J.* (2020) 47 Cal.App.5th 870, 885 (*Austin J.*).)

B.    *Applicable Law*

ICWA reflects a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards that a state court must follow before removing an Indian child from his or her family.  (25 U.S.C. § 1902; *Austin J.*, *supra*, 47 Cal.App.5th at pp. 881–882.)  Both ICWA and the Welfare and Institutions Code define an "Indian child" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe."  (25 U.S.C. § 1903(4); see § 224.1, subds. (a) and (b) [incorporating federal definitions].)

The juvenile court and DCFS have "an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . may be or has been filed, is or may be an Indian child."  (§ 224.2, subd. (a); see *D.F.*, *supra*, 55 Cal.App.5th at p. 566; see *In re Isaiah W.* (2016) 1 Cal.5th 1, 9, 11.)  This continuing duty can be divided into three phases:  the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice.  (*D.F.*, at p. 566.)

The *initial duty to inquire* whether a child is an Indian child begins with "the initial contact," i.e., when the referring party reports child abuse or neglect that jumpstarts DCFS investigation.  (§ 224.2, subd. (a).)  DCFS's initial duty to inquire includes asking the child, parents, legal guardian, extended

7

family members, and others who have an interest in the child whether the child is, or may be, an Indian child.  (*Id.*, subd. (b).)  Similarly, the juvenile court must inquire at the "first appearance in court of *each party*" whether he or she "knows or has reason to know that the child is an Indian child."  (*Id.*, subd. (c), italics added.).  The juvenile court must also require the parties to complete Judicial Council form ICWA-020, Parental Notification of Indian Status.  (See *D.F.*, *supra*, 55 Cal.App.5th at p. 566.)  The parties are instructed to inform the court "if they subsequently receive information that provides reason to know the child is an Indian child."  (§ 224.2, subd. (c).)

A *duty of further inquiry* is imposed when DCFS or the juvenile court has "reason to believe" that an Indian child is involved in the proceedings "but does not have sufficient information to determine that there is reason to know" the child is an Indian child.  (§ 224.2, subd. (e); see *D.F.*, *supra*, 55 Cal.App.5th at p. 566.)  There is reason to believe an Indian child is involved whenever the court or DCFS has "information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe."  (§ 224.2, subd. (e)(1).)  Further inquiry as to the possible Indian status of the child includes:  1) interviewing the parents and extended family members to gather required information; 2) contacting the Bureau of Indian Affairs and State Department of Social Services for assistance in identifying the tribes in which the child may be a member or eligible for membership in; and 3) contacting the tribes and any other person that may reasonably be expected to have information regarding the child's membership or eligibility.  (§ 224.2, subd. (e)(2)(A)–(C).)

8

The juvenile court's finding there is a "reason to know" an Indian child is involved triggers the *duty to send formal notice* per ICWA to the pertinent tribe(s) via registered or certified mail. (§ 224.3, subd. (a)(1); see *D.F.*, *supra*, 55 Cal.App.5th at p. 568.) "The sharing of information with tribes at [the further] inquiry stage is distinct from formal ICWA notice, which requires a 'reason to know'—rather than a 'reason to believe'—that the child is an Indian child." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1049.)[6]

C.    *Analysis*

Mother argues the juvenile court's findings that ICWA did not apply to the children was "premature as neither the court nor the CSW's duty of inquiry ended with the parents' form notifications." She believes the juvenile court's ICWA findings "are not supported by substantial evidence and should be reversed." We review the record for substantial evidence in support of the juvenile court's findings that ICWA did not apply to the proceedings.

Here, Mother notified the juvenile court via her ICWA-020 form that she had no Indian heritage. Similarly, Adrian B. and Jose D. stated Indian status does not apply to them via their respective ICWA-020 forms filed with the court. At each parent's first appearance, the juvenile court reviewed the record before it

_____

[6]    Here, neither the duty of further inquiry nor ICWA's formal notice provisions are at issue because Mother does not contend there is "reason to believe" the children are Indian children. Rather, her contention has to do with the juvenile court's and DCFS's duty to conduct initial inquiry as to whether the minors are Indian children.

9

before finding "there is no reason to know the children are Indian children within the meaning of ICWA" and that "ICWA does not apply."  In addition, during the CSW's May 18, 2021 interview with Mother, she once more denied Indian ancestry and identified herself as Latina.  Adrian B. and Jose D. also repeated their denial of any Indian ancestry during their telephonic interviews with the CSW on May 19, 2021.  There was no other information before the juvenile court that would suggest the children might be Indian children.  Under the deferential standard of review that governs, we find the foregoing constitutes substantial evidence supporting the juvenile court's finding that ICWA does not apply.

Mother, however, contends the juvenile court and DCFS failed to inquire of extended family members, specifically PGM and PU, as to whether the children are Indian children.  She argues the "record is devoid of any indication that . . . the juvenile court or [DCFS] inquired of PGM or the [PU] whether the children are or may be Indian children."  We review claims of inadequate inquiry into a child's Indian ancestry for substantial evidence.  (*In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430.)

To the extent Mother argues the juvenile court (as opposed to DCFS) should have asked extended family members PGM and PU about Indian ancestry, the argument lacks merit because section 224.2, subdivision (b) requires only the child welfare agency (here, DCFS) to interview a child's extended family about Indian ancestry.  (See *In re Darian R.* (2022) 75 Cal.App.5th 502, 509 [Mother's argument that the juvenile court should have asked extended family members or paternal aunt about Indian ancestry "lacks merit" based on § 224.2, subdivision (b)].)

10

Mother argues the juvenile court should have inquired at PGM's and PU's first appearance as to whether the children are Indian children. She relies on section 224.2, subdivision (c). Section 224.2, subdivision (c) imposes an initial duty upon the juvenile court to ask at "the first appearance in court of *each party*" whether he or she knows or has reason to know the child is an Indian child. (§ 224.2, subd. (c), italics added.) In the case before us, the juvenile court conducted its initial inquiry as to whether A.P., D.B., and M.B. are Indian children, during Mother's and Adrian B. first appearance at the April 2021 hearing and Jose D.'s first appearance at the May 2021 hearing. The court reviewed the ICWA-020 forms submitted by each parent. After noting Mother and both Fathers indicated no Indian ancestry, the court found ICWA was not applicable. The record also confirms the court instructed the parties, in conformance to section 224.2, subdivision (c), to inform the court if they subsequently receive information that provides reason to know the child is an Indian child.

We disagree with Mother's broad interpretation of "the first appearance in court of *each party*" (§ 224.2, subd. (c)) to include the first appearance in court of any third party and/or extended family member. Section 224.2, subdivision (c) specifies that the court's initial duty to inquire at the first court appearance is limited to "each party" which, in this case, are the minors' parents. PGM was not a legal guardian of the three children, and nothing in the record demonstrates she was a party in this case.

As for Mother's contention that DCFS had an obligation under section 224.2, subdivision (b), to inquire of extended family members PGM and PU about Indian ancestry—we agree. And the record contains substantial evidence that DCFS did inquire to

11

that effect. The petition filed by DCFS on April 1, 2021 included an Indian Child Inquiry Attachment, one for each child, that provided the CSW inquired as to Indian status and "on information and belief confirm[ed] . . . by asking the child, the child's parents, *and other required and available persons* about the child's Indian status"; the attachment also states the inquiry gave "no reason to believe the child is or may be an Indian child." We note as well—as neither party raised this important distinction—that PGM and PU are not biologically related to A.P. and thus their possible Indian heritage would have no bearing on A.P.

Mother relies on *In re Benjamin M.* (2021) 70 Cal.App.5th 735, but that case is inapposite. In that case, "Father never appeared in the juvenile court and thus [was] never asked whether he had reason to believe [the child] is an Indian child." (*Id.* at p. 744.) The reviewing court found DCFS "failed its duty of inquiry by not asking 'extended family members' [citation] such as Father's brother and sister-in-law whether [the child] has Indian ancestry on his paternal side," especially since DCFS had spoken to Father's brother and sister-in-law and "the missing information was readily obtainable." (*Ibid.*) In contrast, all three parents were available and denied Indian heritage multiple times in the case before us. (See also *In re Noreen G.* (2010) 181 Cal.App.4th 1359, 1388 ["Where the record below fails to demonstrate and the parents have made no offer of proof or other affirmative assertion of Indian heritage on appeal, a miscarriage of justice has not been established and reversal is not required."].)

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


STRATTON, J.

We concur:


GRIMES, Acting P. J.


HARUTUNIAN, J. *

---

\*      Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.